No. 12,059.

## ADAMS v. THE STATE.

CRIMINAL LAW.—*Jeopardy.*—*Discharging Jury.*—If, after a jury is empan-
elled and sworn, it be disclosed that a·juror is incompetent because not
a freeholder or householder, and the accused declines to object to the
juror, and the court thereupon, of its own motion, discharges the jury,
the accused has been once in jeopardy and should be released.

From the Huntington Circuit Court.

*J. C. Branyan, M. L. Spencer, R. A. Kaufman* and *W. A.
Branyan,* for appellant.

*G. W. Gibson,* Prosecuting Attorney, *J. M. Hildebrand* and
*C. W. Watkins,* for the State.

NIBLACK, J.—This was a prosecution by indictment against
Joseph J. Adams, under section 2204, R. S. 1881, for selling
a promissory note to the Citizens Bank of Huntington, at
Huntington, Indiana, knowing that one of the signatures to
the note had been obtained by false pretences. Upon a former
appeal to this court the indictment was held to be sufficient,
and the judgment below quashing it was reversed. *State* v.
*Adams,* 92 Ind. 116.

After the cause was remanded, and issue had been formally
joined by the entry of a plea of not guilty, a panel of jurors
was called to try it. A man known as Luther Crandall was
one of the persons thus called·to serve as jurors in the cause.
Crandall was not specially interrogated as to his qualifications
as a juror, but others called with him were so interrogated in
his presence and hearing. Before the jury were sworn the
court inquired whether all were either freeholders or house-
holders of the county, to which there was a general response
in the affirmative. After the jury were sworn, but before
any statement of the case had been made to them, and before
any further proceedings of any kind had been had, Cran-
dall informed the court that he had, by inadvertence, incor-
rectly answered the court's inquiry as to some of his qualifi-

cations as a juror; that he was, in fact, neither a freeholder nor a householder. The court then inquired of the defendant whether he objected to Crandall as a juror on account of the information which he, Crandall, had thus communicated to the court, to which the defendant, through his attorneys, responded, " We decline to change the jury." The court, thereupon, over the objection and exception of the defendant, discharged the jury. The defendant then moved that he be discharged and permitted to go hence without day, upon the ground that he had been once placed in jeopardy, and that he ought not, for that reason, to be longer held to answer the charge which a jury had been empanelled as above to try. But the court overruled the motion and proceeded to empanel another jury to try the cause, which resulted in finding the defendant guilty as charged, and in sentencing him to the State's prison for a term of two years.

It is a well settled rule that all objections to the competency of a juror are waived by neglecting to use due diligence in urging them as well as by the failure of the party, afterwards complaining, to avail himself of such objections at the proper time, after they have come to his knowledge. *Kingen* v. *State,* 46 Ind. 132; *Gillooley* v. *State,* 58 Ind. 182; *Patterson* v. *State,* 70 Ind. 341; 1 Bishop Crim. Proc., section 946.

That rule applies especially to that class of disqualifications which arise from a proposed juror not being either a freeholder or householder, or a voter of the county. It is also well settled that when the ordinary forms of law have been complied with, jeopardy attaches when the jury are sworn. 1 Bishop Crim. Law, section 1014; 1 Bishop Crim. Proc., section 961; *Maden* v. *Emmons,* 83 Ind. 331.

When jeopardy has begun, and the jury are unnecessarily and without the consent of the prisoner discharged, such a discharge of the jury is the equivalent of an acquittal, and the prisoner thereby becomes entitled to exemption from further prosecution for the same offence. *Wright* v. *State,* 5

Adams v. The State.

Ind. 290; *Wright* v. *State,* 7 Ind. 324; *Maden* v. *Emmons, supra.*

On that subject Bishop in his work on Criminal Law, vol. 1, section 1037, says: " The general doctrine, let it be repeated, is, that if, after the jeopardy already explained has attached, the judge discharges the jury without the prisoner's consent, the prisoner is entitled to be set at liberty, and he is not to be again brought into danger for the same offence."

As deducible from the authorities herein above cited, Adams, the appellant in this case, waived all objection in the first instance to Crandall's qualifications as a juror by failing to make any inquiry upon the subject at the proper time, and when the action afterwards taken by the court resulted in bringing out the fact that Crandall was neither a freeholder nor a householder, he still made no objection on that account. In all such proceedings a failure to object is construed as implying consent, and the declination of the appellant to " change the jury " ought, under the circumstances, to have been interpreted as meaning that he was willing to proceed with the jury as it was then constituted. There was, consequently, no sufficient cause for discharging the jury at the time it was discharged, and the action of the court in that respect, having been without the consent of the appellant, either express or implied, was the equivalent of an acquittal of the offence which the jury were empanelled to try.

It follows that the court below erred in overruling the appellant's motion for his discharge from his arrest upon the indictment against him, and that all subsequent proceedings based upon that indictment were, in consequence, erroneous.

The judgment is reversed, and the cause remanded with instructions to the court below to discharge the appellant.

The clerk will give the necessary notice for the return of the prisoner to the custody of the sheriff of Huntington county.

Filed Dec. 30, 1884.